IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PEDRO PEREZ-HERNANDEZ, | : |
| Petitioner, | : |
| v. | : CIVIL ACTION NO. 14-00229-WS |
| UNITED STATES OF AMERICA, | : CRIMINAL ACTION NO. 11-00011-WS |
| Respondent. | |

## REPORT AND RECOMMENDATION

Pedro Perez-Hernandez, proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 107) and a motion to amend his original motion (Doc. 135) challenging this Court's judgment against him in the above-styled criminal action. The United States of America ("Respondent") has timely filed responses in opposition to the § 2255 motion as amended (Docs. 113 & 137), and Perez-Hernandez has filed two reply briefs (Docs. 133 & 138) to the responses filed by the United States.

Perez-Hernandez's § 2255 motion is now under submission and is ripe for adjudication. This matter has been referred to the undersigned Magistrate Judge for the holding of an evidentiary hearing, if necessary, and for entry of a report and recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, and S.D. Ala. General L.R. 72(a)(2)(R). Upon consideration, and for the reasons stated herein, the undersigned will **RECOMMEND** that Perez-Hernandez's § 2255 motion, as amended, be **DENIED** and that this matter be **DISMISSED with prejudice**. The undersigned further RECOMMENDS that Perez-

Hernandez be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## I. Background

In January 2011, Perez-Hernandez was charged for possessing a firearm after having been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1) (Doc. 1.) Perez-Hernandez retained attorney James Byrd, Esq., to represent him (*See, e.g.,* Doc. 9.) and on June 21, 2011, pursuant to a written plea agreement (Doc. 18), entered a plea of guilty to the sole count of the indictment. (Doc. 19).

Two days prior to sentencing, on October 17, 2011, Perez-Hernandez filed a *pro se* motion to dismiss his retained attorney (Doc. 28).  After a hearing on the issue of continued representation, the oral motion to withdraw submitted by Byrd was granted (Doc. 31) and a CJA Panel Attorney, Richard Alexander, Esq., was appointed to represent the defendant. (*Id.*)  With the assistance of Alexander, Perez-Hernandez filed a motion to withdraw his guilty plea and to continue the sentencing hearing (Doc. 33). The Court granted the request for a continuance of the sentencing hearing and required the defendant to supplement his motion to withdraw his guilty plea by providing specific details to support the generalities contained therein (Doc. 34).[1]  Perez-Hernandez declined to submit additional information that would explain why he

---

[1] "As defendant is well aware, all of these topics were fully covered in the Rule 11 colloquy before the undersigned accepted his plea. If defendant now wishes to renounce the responses he gave under oath at the guilty plea hearing, he must explain in detail why. Mere conclusory statements about not receiving proper information, not understanding, and having no choice are diametrically opposite to his sworn statements at the guilty plea hearing. … [T]he Court will not reflexively grant him a hearing absent some reason to believe that such would be constructive. Accordingly, defendant is ordered to supplement his motion … with specific details to support the generalities in his motion. This supplement **…** must explain not only how defendant contends his previous counsel was deficient at the guilty plea stage but also why defendant answered falsely during the Rule 11 colloquy**.**"

(Doc. 34, at 2)

wished to renounce the responses he made under oath during the guilty plea hearing and his motion to withdraw his guilty plea was thereafter denied on January 6, 2012 (Doc. 48).

On January 19, 2012, following a sentencing hearing with assistance of counsel and the services of an interpreter, Perez-Hernandez was sentenced to forty-six months imprisonment, followed by three years of supervised release.   (Doc. 69)   Richard Alexander was allowed to withdraw (Doc. 54) and CJA Attorney Richard Shields, Esq., was appointed to represent Perez-Hernandez on appeal (Docs. 55 & 56). The judgment of Perez-Hernandez's conviction and sentence was entered January 31, 2012. (Doc. 69).

Even though the appeal filed by Perez-Hernandez only challenged the denial of his motion to withdraw his guilty plea (Doc. 84), it clearly involved several issues that are raised in this motion filed pursuant to § 2255.[2]   That appeal was decided against Perez-Hernandez on September 24, 2012 (*Id*. at 6, *see also* Doc. 87) and his petition for certiorari was denied on October 7, 2013 (Doc. 107).  Perez-Hernandez filed his present § 2255 motion on May 23, 2014.[3]  (*See Id*.).

## II.  Applicable Law

---

[2] "Importantly, Perez-Hernandez waited five months after pleading guilty to move to withdraw his plea and did not raise it when he filed his motion to remove counsel. When he later sought to withdraw his plea, instead of providing substantial reasons for his need to do so, Perez-Hernandez offered conclusory allegations about his original counsel's deficiency. Perez-Hernandez did not clarify how his counsel was coercive or otherwise deficient. And, although he stated that he was confused and afraid, he did not describe the nature of his confusion or the source of his fear. Further, Perez-Hernandez never explained why he testified, unequivocally, that he understood the nature of the charge against him, that he agreed with the government's factual proffer, and that he received adequate counsel. … In light of these statements, which Perez-Hernandez has not contradicted with any specificity, the district court reasonably found that Perez-Hernandez's guilty plea was made knowingly, voluntarily, and with close assistance of counsel."  Doc. 84 at 5-6.

[3] The Government does not contest that Perez-Hernandez's original motion (Doc. 107) or his amendment (Doc. 135) were timely filed under 28 U.S.C. § 2255(f) (*see* Docs. 113 & 137).

A.   **General Standards Under § 2255**. Section 2255 provides, in relevant measure, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . . If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(a) & (b).

Section 2255 thus "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence[,]" *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-1216 (11th Cir. 2014) (citation omitted), and courts in this Circuit are to "liberally construe" such *pro se* applications for relief, *id.* at 1215.

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715 [(11th Cir. 2002)] (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553 (quoting *United States v. Guerra*, 588 F.2d

> 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States*, 365 F.3d 1225,
> 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn
> amount to nothing more than mere conclusory allegations, the district
> court was not required to hold an evidentiary hearing on the issues and
> correctly denied Lynn's § 2255 motion.").

*Id.* at 1216 (footnote omitted).

It is clear that "a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir.) (per curiam) (citing *Frady*, 456 U.S. at 165, 102 S.Ct. at 1593 (collecting cases)), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004). This is in large measure because "[o]nce the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164, 102 S.Ct. 1584, 1592 & 1592-1593, 71 L.Ed.2d 816 (1982). Thus, "[b]ecause collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.  Accordingly, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn, supra,* 365 F.3d at 1232-1233 (internal citations, quotation marks, and footnote omitted).

> Under the procedural default rule, a defendant generally must
> advance an available challenge to a criminal conviction or sentence on
> direct appeal or else the defendant is barred from presenting that claim in
> a § 2255 proceeding. This rule generally applies to all claims, including
> constitutional claims.

> A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent.

*Id.* at 1234-1235 (internal citations, quotation marks, and footnote omitted).

**B.** **Pleading Requirements Under § 2255.**   The rules that govern motions filed under 28 U.S.C. § 2255 specifically require that the motion: (1) specify all the grounds for relief available to the moving party; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant.   Rule 2(b), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255.   The Appendix of Forms for these rules contains instructions and a form (which was used in this case) designed to assist *pro se* parties with the pleading requirements.

Those seeking to have their guilty pleas vacated and requesting a trial, as is the request made by Perez-Hernandez, cannot simply list their claims in the hope that the court will develop them on their behalf. *Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir.1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States,* 473 F.2d 1042, 1043 (5th Cir.1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations)). It is clear and reasonable that

> [t]he § 2254 Rules and the [28 U.S.C.] § 2255 Rules mandate "fact pleading" as opposed to "notice pleading," as authorized under Federal Rule of Civil Procedure 8(a). Coupled with the form petition or motion, the federal rules give the petitioner or movant ample notice of this difference. If, for example, Rule 2(c)(1) and (2) of the § 2254 Rules should

cause a petitioner (or his counsel) to doubt what the words "specify all grounds" and "state the facts supporting each ground" mean, the CAUTION contained in paragraph (9) of the "Instructions" should remove such doubt. As the Supreme Court has observed, "[h]abeas corpus petitions must meet heightened pleading requirements, *see* 28 U.S.C. § 2254 Rule 2(c)." *McFarland v. Scott,* 512 U.S. 849, 856, 114 S.Ct. 2568, 2572, 129 L.Ed.2d 666 (1994).

The reason for the heightened pleading requirement—fact pleading—is obvious. Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards. The evidence supporting a claim brought under the doctrine set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for example, may not be available until the prosecution has run its course. The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition.

*Borden v. Allen,* 646 F.3d 785, 810 (11th Cir. 2011) (footnote omitted).

   **C.**   **Effect of Guilty Plea**.  "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted);  *see also, e.g.*, *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("'A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.'"); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir.) ("'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.'"), *cert. denied sub nom. Renegifo v. United States,* 132 S.Ct. 139, 181 L.Ed.2d 58 (2011). Stated differently, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81

L.Ed.2d 437 (1984).  Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989);  *see also Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'").  Moreover, "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* at 621, 118 S.Ct. at 1610.

> [P]lea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); *see id.* ("To allow indiscriminate hearings in federal postconviction proceedings ... for federal prisoners under 28 U.S.C. § 2255 ... would eliminate the chief virtues of the plea system—speed, economy, and finality."). While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," … "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71–72, 97 S. Ct. 1621. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74, 97 S. Ct. 1621; *see id.* at 80 n. 19, 97 S. Ct. 1621 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74, 97 S.Ct. 1621.

*Winthrop-Redin, supra*, 767 F.3d at 1216.

In sum, because "'[s]olemn declarations in open court carry a strong presumption of verity[,]' *Blackledge,* 431 U.S. at 74, 97 S. Ct. 1621[,]" when a defendant "ma[k]e[s] statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (per curiam)." *Id.* at 1217; *accord, e.g., United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8

(11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Cardenas*, 230 Fed.Appx. 933, 935 (11th Cir. Jul. 25, 2007) (unpublished) ("We apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir.1994); therefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988). Nothing in the record shows that Cardenas has satisfied his burden of showing that his sworn statements made during the plea colloquy-including that no one had predicted what sentence he would receive-were false; and we reject his claim that his guilty plea was involuntary.").

     **D.**    <u>**Ineffective Assistance of Counsel**</u>.  The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 688 & 694, 104 S.Ct. at 2064 & 2068). "'Conclusory allegations of ineffective assistance are insufficient[,]'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)); *see also Rosado v. Secretary, Dep't of Corrections*, 2010 WL 2976886, *4 (M.D. Fla. Jul. 20, 2010) ("[V]ague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim."), and  "[b]ecause both parts

of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted); *see also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Adamson v. United States*, 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied*, 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").[4]

The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States*, 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright*,

---

[4] Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (citation omitted), *cert. denied sub nom., Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).

748 F.2d 1505, 1508 (11th Cir. 1984). Moreover, in the context of sentencing following entry of a guilty plea, the court simply considers whether petitioner has established, in accordance with *Strickland, supra,* that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. May 12, 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency."), *aff'd,* 364 Fed.Appx. 769 (3rd Cir. 2010), *cert. denied,* ___ U.S. ___, 131 S.Ct. 1026, 178 L.Ed.2d 848 (2011).

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[5] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.
>
> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. Jul. 12, 2011) (internal quotation marks and citations omitted; footnote added), *cert. denied sub nom. Means v. Tucker,* ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of

---

[5] In order to satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)); *Brownlee v. Haley*, 306 F.3d 1043, 1059-1060 (11th Cir. 2002) ("In evaluating the first, or 'performance,' prong of *Strickland,* '[j]udicial scrutiny of counsel's performance must be highly deferential.' Because retrospective evaluation of a lawyer's performance can be difficult, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy.' A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.' Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the 'strong presumption in favor of competence,' we have held that in order to prove deficient performance, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take. Under the second, or 'prejudice,' prong of Strickland, a petitioner must 'affirmatively prove prejudice' by showing that counsel's errors 'actually had an adverse effect on the defense.' This

requires a showing of more than 'some conceivable effect on the outcome of the proceeding.' Instead, the petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he 'need not show that counsel's deficient conduct more likely than not altered the outcome in the case.' When evaluating this probability, 'a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" (internal citations omitted).)

"[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504, 123 S.Ct. at 1694; *see also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255."), *cert. denied*, 134 S. Ct. 962, 187 L.Ed.2d 822 (2014).

### III. Analysis

**A.    Constitutional Errors AllegedlyCommitted by District Court.** Ground One of the § 2255 motion lists a "myriad of constitutional errors" allegedly committed by the Court. Doc. 107 at 8. Although not completely coherent and in some instances appearing to overlap, they are discussed in the order in which they were presented.

**1.    Denial of motion to withdraw guilty plea.** This issue was raised and has been decided against Perez-Hernandez both in this Court and in the Eleventh

Circuit.  (Doc. 48 at 10. ("The undersigned accepted his guilty plea on June 17, 2011, after a searching inquiry of the Rule 11 concerns at a change of plea hearing attended by Perez-Hernandez and his able counsel. The guilty plea was knowing, voluntary, and entered with close assistance of counsel."); Doc. 84 at 6 ("Because the district court reasonably considered the totality of the circumstances, we affirm the district court's denial of Perez-Hernandez's motion to withdraw his guilty plea.")).  Thus, this alleged "constitutional error" is unavailable to Perez-Hernandez in a motion filed pursuant to 28 U.S.C. § 2255.  See *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.") (internal brackets, quotation marks and citation omitted); see also *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012) ("At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding."); *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case.")  The undersigned can discern no information or evidence underlying this claim that was not raised, or could have been raised, by Perez-Hernandez and considered by the Eleventh Circuit on direct appeal of the denial of his motion to withdraw his guilty plea.

## 2.  **Sentence Enhancement.**

This sentencing claim, that his sentence was "enhance[ed] without due process of law on charges not included in the indictment" is due to be denied without an evidentiary hearing for several reasons.

First, this claim is unavailable since it was not raised on direct appeal.  Under the procedural default rule "a defendant generally must advance an available challenge to a

criminal conviction or **sentence** on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn,* 365 F.3d at 1234 (emphasis added). Perez-Hernandez has failed carry his burden to show that an exception to the procedural default rule would require consideration of this claim.

Second, this claim is based on unsupported generalizations. *See Winthrop-Redin,* 767 F.3d at 1216.  Of singular importance, the due process failures have not been identified with any degree of specificity.  From a review of the record, Perez-Hernandez has failed to show that the five offense levels added for the discharge of a firearm and the five offense levels added because a victim sustained serious bodily injury were erroneously applied without he and his attorney having an adequate opportunity to object to their application.

Third, his allegations in support of a due process violation during the sentencing hearing are affirmatively contradicted by the transcript of the hearing (*see* Sentencing Hearing Transcript, Doc. 65) and by his objections to the Presentence Report filed on October 14, 2011 (Doc. 27).  He was represented by counsel, had an opportunity to review the Presentence Report and had the opportunity to present evidence to show that the enhancements imposed were not appropriate.

And finally, if Perez-Hernandez intended to raise a claim under *United States v. Alleyne*, 133 S. Ct. 2151 (2013), as interpreted by the government (Doc. 113 at 11), that claim is foreclosed because the enhancements at issue, presumed to be for the discharge of a firearm resulting in serious bodily injury, affected only the guideline calculations and not the statutory range of punishment.  *See Unites States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014) ("Accordingly, a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the statutory maximum or minimum authorized by facts

determined in a guilty plea or jury verdict. ").  The statutory range for a violation of 18 U.S.C. § 922(g)(1) is 10 years/$250,000 fine/3 years SRT (Final Presentence Investigation Report, Doc. 21) and the sentence of 46 months followed by 3 years of supervised release that was imposed in this case was clearly within that range (Judgment, Doc. 69).

      **3.**    **Miscellaneous Claims.**

Perez-Hernandez has included a laundry list of claims, which he feels constitute reversible error by the court.  They are interpreted as:

(a)    The court abused its discretion by failing to determine that a factual basis for the plea had been shown. Doc. 107 at 6;

(b)    He was not shown or informed of a plea agreement in open court. *Id.*;

(c)    The court failed to inform him of collateral immigration consequences should he enter a guilty plea.  *Id.*;

(d)    He was induced to plead guilty by the judge. *Id.* at 6-8;

(e)    His rights were not adequately explained to him before the guilty plea was accepted. *Id.* at 8;

(f)    His plea was involuntary due to his inability to speak fluent English. *Id.;*

(g)    The court improperly issued a warrant for his arrest instead of a summons.  *Id.* at 11;

(h)    The court improperly applied, at sentencing, an enhancement of five levels for the discharge of a firearm resulting in bodily injury.  *Id.* at 12.

After a review of the record in this action, it is abundantly clear that Perez-Hernandez had the requisite information to raise these issues, with the assistance of appointed counsel, when he filed his direct appeal but he did not.  He chose to only

attack the decision to deny his request to withdraw his guilty plea.  These claims, to the extent they are interpreted to be independent of the claim raised on direct appeal, are therefore barred by the doctrine of procedural default.  *Lynn, supra,* 365 F.3d at 1232-1233 (internal citations, quotation marks, and footnote omitted).

> Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. This rule generally applies to all claims, including constitutional claims.

> A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent.

*Id.* at 1234-1235 (internal citations, quotation marks, and footnote omitted).

Perez-Hernandez has failed to show that his procedural defaults should be excused.  It appears that he attempts to overcome the procedural default doctrine by arguing that he received ineffective assistance of appellate counsel (Motion to Amend, Doc. 135) and that he is actually innocent of the charge that he illegally possessed a firearm after having been convicted of a felony.  But, as discussed below, the evidence does not establish ineffective assistance of trial or appellate counsel or that he was actually innocent of the charged offense.

**B.    Ineffective Assistance of Trial and Appellate Counsel.**

Perez-Hernandez alleges that his trial and appellate attorneys failed to provide sufficient representation, claiming various forms of ineffective assistance of counsel from plea negotiations through appeal in the Eleventh Circuit.

**1.    Claims Considered Conclusory as to Trial Counsel.**

17

Ground Two of the § 2255 motion contains several instances where Byrd is alleged to have been ineffective.  Of those, the following are considered conclusory and have not been shown to have factual support: (a) he was not available; (b) he failed to inform Perez-Hernandez of an important development in the case; (c) he made his own decisions without first consulting his client such as filing a notice of intent to plead guilty; (d) failed to investigate; (e) withheld evidence from Perez-Hernandez; and (f) did not inform Perez-Hernandez of the consequences.  Doc. 107 at 9-10.  In stark contrast to these conclusory allegations, the findings this Court reveal that Perez-Hernandez had a completely different opinion of the efforts and competence of Byrd that were expressed under oath during the guilty plea hearing:

> A guilty plea hearing was conducted before the undersigned on June 17, 2011. With Byrd at his side, Perez-Hernandez attended that hearing and, after a lengthy colloquy, entered a plea of guilty to the § 922(g)(1) charge. During that hearing, Perez-Hernandez was placed under oath, after which he made the following statements and representations: (i) he agreed that he had reviewed the Indictment with Byrd and that he fully understood the charges against him; (ii) he acknowledged that he was fully satisfied with the representation he had received from Byrd, and that he had fully discussed with Byrd the facts surrounding the charge; (iii) he admitted having signed the Plea Agreement, and further acknowledged that he had had an opportunity to read and review it with counsel, that he fully understood its terms and conditions, and that he agreed with it; (iv) he denied that anyone had attempted to force him to plead guilty, or to pressure or threaten him in any way; (v) he understood that he faced a maximum term of imprisonment of 10 years, a fine of up to $250,000, a supervised release term of up to three years, and a special assessment of $100; (vi) he agreed that Byrd had discussed with him how the Sentencing Guidelines might affect his case; (vii) he acknowledged that this Court has authority to impose a sentence more or less severe than that called for in the Guidelines; (viii) he indicated his understanding that he would be bound by his guilty plea even if he did not like the sentence ultimately imposed; (ix) he professed understanding of his jury trial rights, and of the reality that entering a guilty plea would waive those rights; (x) he stated that he understood the elements of the § 922(g)(1) offense to which he was pleading guilty; (xi) he agreed that he had in fact committed the acts specified in the Factual Resume; and (xii) he entered a plea of guilty to the § 922(g)(1) charge. (See doc. 37.)

Doc. 48 at 2 (footnote omitted).

These conclusory claims do not entitle Perez-Hernandez to the relief he is seeking, basically to withdraw his guilty plea, since he has failed to support them with facts that would establish deficient performance of counsel or resulting prejudice. "'Conclusory allegations of ineffective assistance are insufficient[,]'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)); *see also Rosado v. Secretary, Dep't of Corrections*, 2010 WL 2976886, \*4 (M.D. Fla. Jul. 20, 2010) ("[V]ague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim.")

### 2.     Induced to Plead Guilty Against Free Will.

This claim, contained in Ground Two, appears to be an unartful recast of his motion to withdraw his guilty plea that was argued in the district and appellate courts.  Again, the findings made by this Court and affirmed by the Eleventh Circuit, clearly reveals the unsupported nature of this claim.

> The cornerstone of defendant's Motion is his repeated insistence, in conclusory terms, that his prior retained counsel (Byrd) subjected him to "Duress and Coersion [sic]" in connection with his guilty plea. There are at least two glaring problems with this argument. First, defendant labels Byrd's actions as coercive, without ever specifying what he did or said that Perez-Hernandez contends placed him under duress to plead guilty. The November 29 Order admonished defendant that, to establish a "fair and just reason" for withdrawing his guilty plea, he must do more than bandy about inflammatory labels and conclusory accusations, but must instead explain in detail what he says Byrd did or did not do to force him to plead guilty against his will. Perez-Hernandez has not made such a showing. Second, the undersigned specifically asked defendant about duress and coercion during the Rule 11 plea colloquy. Under oath, Perez-Hernandez answered, "No, sir," when asked, "has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way?"… "There is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). … Defendant has not overcome that presumption here, inasmuch as he has offered no colorable explanation for why he denied experiencing pressure or coercion at the guilty plea hearing, only to insist now that the converse was true.

Nor does defendant demonstrate a "fair and just reason" for withdrawal of his plea through vague accusations that he had "insufficient counsel," that he "was not clear on charge and details of the charge" to which he pled guilty, that he "was not provided information" and that he had "not had chance to discuss every thing with the attorney and need more time." (Docs. 44, 47.) Byrd is an experienced and capable criminal defense attorney who has practiced in this District Court on a regular basis for many years. Perez-Hernandez cannot withdraw his plea merely by branding Byrd "insufficient" or "ineffective," without explaining in detail what he thinks Byrd did or failed to do in that regard. He has not provided the requisite specifics.

More importantly, defendant's suggestions that Byrd did not discuss everything with him and that he did not understand the charges are irreconcilable with his statements under oath at the guilty plea hearing. When the undersigned asked Perez-Hernandez whether he was "fully satisfied with the representation that you've received from your attorney in this case, and have you fully discussed with your attorney all of the facts surrounding the charge," Perez-Hernandez answered, "Yes, I did." (Doc. 37, at 9.) Defendant has provided the Court with nothing that would overcome the strong presumption that his statement under oath at the guilty plea hearing was true. Furthermore, despite multiple opportunities and express invitation to do so, Perez-Hernandez has failed to provide any specifics in support of his Motion as to what information he claims to have been deprived of, what misunderstandings he had concerning the offense to which he was pleading guilty, what topics he contends he did not have time to discuss with his attorney, or how he believes his attorney let him down. And of course, Perez-Hernandez has offered no coherent explanation for why he now disavows all of his responses under oath at the guilty plea hearing, when he assured this Court that he was satisfied with counsel, that he understood the charges and the plea agreement, that he had had a full opportunity to discuss the matter with his attorney, and that he wished to plead guilty.

Doc. 48 at 6-8 (footnotes omitted).

For several reasons, the undersigned finds that Perez-Hernandez's claims that his trial counsel's ineffective assistance rendered his guilty plea unknowing and involuntary are due to be denied without an evidentiary hearing.

First, these claims are based largely on unsupported generalizations. *See Winthrop-Redin*, 767 F.3d at 1216. For instance, Perez-Hernandez repeatedly claims that Byrd made no effort to investigate or otherwise meaningfully defend his case, induced him to plead guilty against his free will, was not available to him, did not inform him of

an important development in the case, made his own decisions without consulting his client, committed perjury and did not inform the defendant of the consequences of entering a guilty plea. (Ground Two, Doc. 107 at 9).  He has not identified, however, specific actions by Byrd that would rebut the strong presumption that his actions were reasonable given the circumstances of this case.  Perez-Hernandez has alleged no reasonably specific, non-conclusory facts that, if true, would entitle him to relief. *Winthrop-Redin*, 767 F.3d at 1216.  Therefore, there is simply no factual basis for this Court to surmise, much less find, that no competent attorney would have acted (or omitted to act) in the same manner as did Byrd in this case. *See Hall, supra,* 611 F.3d at 1290.

Second, and relatedly, because Perez-Hernandez has provided no specifics regarding Byrd's alleged errors, his allegations fail to demonstrate how he was prejudiced by them.  Indeed, nowhere in his § 2255 motion and briefing does he even conclusorily allege, much less allege reasonably specific, non-conclusory facts, "that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill, supra*, 474 U.S. at 59, 106 S.Ct. at 370.  Even though it is undisputed that Perez-Hernandez wanted to withdraw his guilty plea even prior to sentencing, there is no showing that Byrd committed any performance errors that would have caused a reasonable defendant to forego his constitutional right to a jury trial and elect to enter a guilty plea. "In other words, in order to satisfy the 'prejudice' requirement, [Perez-Hernandez] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (*Id.*)

Third, Perez-Hernandez's allegations in support of his claims of ineffective assistance of counsel are affirmatively contradicted by the terms of his signed guilty

plea (Doc. 18) and by his sworn testimony at his June 17, 2011 guilty plea hearing (*see*

Doc. 37, Guilty Plea Hearing Transcript).[6]

> During [the change-of-plea] hearing, Perez-Hernandez was placed under oath, after which he made the following statements and representations: (i) he agreed that he had reviewed the Indictment with Byrd and that he fully understood the charges against him; (ii) he acknowledged that he was fully satisfied with the representation he had received from Byrd, and that he had fully discussed with Byrd the facts surrounding the charge; (iii) he admitted having signed the Plea Agreement, and further acknowledged that he had had an opportunity to read and review it with counsel, that he fully understood its terms and conditions, and that he agreed with it; (iv) he denied that anyone had attempted to force him to plead guilty, or to pressure or threaten him in any way; (v) he understood that he faced a maximum term of imprisonment of 10 years, a fine of up to $250,000, a supervised release term of up to three years, and a special assessment of $100; (vi) he agreed that Byrd had discussed with him how the Sentencing Guidelines might affect his case; (vii) he acknowledged that this Court has authority to impose a sentence more or less severe than that called for in the Guidelines; (viii) he indicated his understanding that he would be bound by his guilty plea even if he did not like the sentence ultimately imposed; (ix) he professed understanding of his jury trial rights, and of the reality that entering a guilty plea would waive those rights; (x) he stated that he understood the elements of the § 922(g)(1) offense to which he was pleading guilty; (xi) he agreed that he had in fact committed the acts specified in the Factual Resume; and (xii) he entered a plea of guilty to the § 922(g)(1) charge. (See doc. 37.)

Doc. 48 at 2 (footnote omitted).   Perez-Hernandez, with the assistance of an attorney,

specifically informed the Court that he understood the consequences of his guilty plea

and the sworn evidence of record proves that he was not induced or forced into

pleading guilty; thus, he has not shown that he was prejudiced by Byrd's actions as

retained counsel.

        **3.**        ***Padillia* claim.**

---

[6] *Cf. Winthrop-Redin*, 767 F.3d at 1216-1217 ("[T]he record contains powerful evidence from Winthrop–Redin himself indicating that his guilty plea was knowing and voluntary. Winthrop–Redin initialed and signed the plea agreement, which specified that he had decided to plead knowingly and voluntarily, without threats, force, intimidation, or coercion. Winthrop–Redin then testified under oath and in detail that his plea had not been induced by threats or force leveled against him or his family.").

The undersigned also interprets the motion to contain a claim that Byrd was ineffective by affirmatively advising Perez-Hernandez of the inapplicability of any collateral immigration consequences associated with his plea, i.e., that he would stand convicted of an aggravated felony and be subject to deportation proceedings.[7]   The Supreme Court has clearly held that criminal defense lawyers must inform their clients of any risk of deportation associated with the entry of a guilty plea. *Padilla v. Kentucky*, 559 U.S. 356, 374, 130 S. Ct. 1473, 1486-87, 176 L. Ed. 2d 284 (2010).  If an attorney fails to inform his non-citizen client of the immigration consequences of his guilty plea, that failure is considered deficient under the Constitution.  (*Id.*)  Assuming deficient performance based on the allegations that Byrd specifically informed Perez-Hernandez that he would not be deported after his sentence was completed, the undersigned turns to the question of whether prejudice has been shown.  Whether Perez-Hernandez is entitled to relief will depend on whether he can demonstrate prejudice as a result the arguably deficient performance of Byrd.

In order to show prejudice, Perez-Hernandez is required to proffer facts or information that would support a finding that, but for the failure of his attorney to notify him of the immigration consequences to entering a guilty plea, he would not have pleaded guilty and would have insisted on going to trial.  *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985).  This showing must include a demonstration that "a decision to reject the plea bargain would have been rational under the circumstances." *Padillia,* 559 U.S.

---

[7] It is clear that the violation of 18 U.S.C. § 922(g)(1) is defined as an aggravated felony under the Immigration and Nationality Act.  8 U.S.C. § 1101(a)(43)(E)(ii).  Thus, Perez-Hernandez faces deportation pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").  What is not clear from this motion is the probability that he will be deported once his sentence is served.  He has not filed a copy of any notice of deportation proceedings nor has he alleged that he has received a notice.  The undersigned, for purposes of deciding this issue will assume that it is likely Perez-Hernandez faces deportation proceedings once his sentence is completed.

at 372.  After a careful review of the record in this case, it is determined that Perez-Hernandez has not supported his claim with facts that would show that he was prejudiced by Byrd's alleged deficient performance.

First, the record contains facts from which it is logical to infer that Perez-Hernandez was aware of the possibility that he would face deportation proceedings. He specifically alleges that the possibility of deportation proceedings was discussed in a conference attended by a probation officer, Byrd and himself on May 25, 2011 (Doc. 14), before the entry of his guilty plea.  (Docs. 107 at 17; 133 at 10)  In addition, the information contained in the Presentence Investigation Report strongly suggests that he was aware of potential immigration problems that arise from criminal convictions.  His criminal history includes a conviction for possession of marijuana in January 1989 for which he received a ten-year sentence.  Ten years later, on February 3, 1999, he was also convicted of prostitution in Harris County, Texas and sentenced to twenty days.  Doc. 21 at 8.  Thus, it cannot be a coincidence that he was also referred for deportation proceedings in 1999.  *Id*. at 10.  Although not deported, he obviously was involved to some degree in a deportation proceeding that ended successfully, allowing him to remain in the United States as a legal resident.  See *Gutierrez v. United States,* 560 F. App'x 924, 927 (11th Cir.) *cert. denied,* 135 S. Ct. 302, 190 L. Ed. 2d 219 (2014) ("The district court did not err in concluding that Mr. Gutierrez failed to show prejudice because (1) he was aware of the risk of deportation, and (2) even if he was not so aware, it would not have been rational for him to reject the plea bargain.").

Secondly, even if Byrd provided an inaccurate assessment of the liklihood that deportation proceedings would be instituted, Perez-Hernandez has failed to show that it would have been rational for him to decide not to plead guilty and elect a jury trial. (*Id*.)  The weight of the evidence against him was extremely heavy and he would have

lost a significant sentencing benefit had he chosen to go to trial.  This Court, in the order

denying the motion to withdraw the guilty plea back on January 6, 2012, summarized

the strength of the Government's case:

> According to the Government's evidence, Perez-Hernandez's offense conduct related to a November 7, 2009 shooting in which both the victim and witnesses identified Perez-Hernandez as the man who fired a shot from a handgun, striking the victim in the abdomen. A subsequent search (pursuant to search warrant) of Perez-Hernandez's residence resulted in seizure of a .25 caliber Tangoglio pistol, and Perez-Hernandez admitted following his arrest that he had shot the victim with a firearm, albeit in self-defense. The Government's evidence also showed that Perez-Hernandez had been convicted of a felony drug charge in Cameron County, Texas in January 1989, such that he was forbidden by federal law from possessing a firearm. (That offense was possession of marijuana, which may be either a felony or a misdemeanor under Texas law; however, given that Perez-Hernandez received a 10-year sentence, it was obviously a felony.) In a presentence interview by the U.S. Probation Office following entry of his guilty plea, Perez-Hernandez stated that he had possessed the gun, that he was protecting himself, and that he was sorry.

Doc. 48 at 1, fn. 2.  Under these circumstances, the prospect that Perez-Hernandez

would be convicted after a jury trial was substantial and provided a significant

incentive to enter into a guilty plea in order to reduce the potential sentence and

prevent the filing of additional charges.  Thus, Perez-Hernandez, because of his actions

and criminal history, faced the certainty that deportation proceedings would be

prosecuted whether he chose a trial by jury or to make the best deal he could get

through a guilty plea.

The Plea Agreement that Perez-Hernandez signed (Doc. 18) provided him with

the opportunity to be sentenced to the lower end of the sentencing guideline range and

provided that no additional charges related to the facts underlying the Indictment

would be filed by the United States.  *Id*. at 4-5.  With full acceptance of responsibility,

Perez-Hernandez could have received a recommended 37 months to serve.[8]  Doc. 21 at 13.  Otherwise, he was facing a potential sentence of up to ten years, a fine of up to $250,000, up to a three-year term of supervised release after imprisonment, a special assessment of $100 and restitution as ordered by the Court.  Without a guilty plea, the recommended sentencing guideline range would have increased to a range of 51 to 63 months imprisonment, extending his possible incarceration by over two years (26 months).  (See Guideline Worksheet, Doc. 14 at 6)  Faced with these options, it makes little or no sense that the rational decision would have been to reject the plea offer and demand a jury trial.  In other words, nothing has been proffered by Perez-Hernandez that would convince the undersigned that a rejection of the plea offer would have been rational.

### 4.   Ineffectiveness of Appellate Counsel.

A motion to amend was filed on March 5, 2015 (Doc. 135) wherein Perez-Hernandez attempts to establish an ineffective assistance of counsel claim against his appointed attorney on appeal. He asserts that Shields failed to keep him informed about the "outcome of the case,"; that he did not review and make arguments based on "Court transcripts,"; and had a conflict of interest.  *Id*. at 2.  These allegations are not born out by the record or any articulated facts that seem applicable.  For instance, the undersigned is unable to identify the conflict of interest that prevented Shields from performing his responsibility to provide effective assistance.  Also, Perez-Hernandez has failed to identify any portion of the transcripts that should have been used by Shields but were not.  He does state that Shields failed to keep him adequately informed of the progress of his appeal and that he failed to seek his client's input as to the

---

[8] The actual sentence he received was 46 months incarceration; three years supervised release and a $100 assessment.  Doc. 69.

contents of his appellate brief but does not offer how providing him with more information or seeking his input as to the contents of the appellate brief would have changed the outcome of his appeal.

When analyzing a claim that appellate counsel was ineffective, courts use the same standard applied to trial counsel as expressed in *Strickland v. Washington*, 466 U.S. 668 (1984).  See *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland.*").  Under the first prong of the *Strickland* test, Perez-Hernandez must show that his appellate counsel's performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Under *Strickland*'s second prong, Perez-Hernandez must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The rambling and many times incoherent statements made by Perez-Hernandez do not show any deficient performance on the part of Shields, nor do they reveal a conflict of interest that would have prevented counsel from zealously representing his client.  Therefore, the undersigned is unable to find that Perez-Hernandez suffered any prejudice by the fact that Shields, in the exercise of his professional judgment, decided to pursue only one issue on appeal.  Without specific information that could be interpreted as showing that but for the Shields' actions or inactions, the results of the appeal would have been different, there is no basis to alter the judgment in this action. Thus, the claim that appellate counsel was ineffective is considered unsupported and invalid.

### 5.    Excuses for Procedural Defaults.

If Perez-Hernandez intended to offer ineffective assistance of appellate counsel as cause for his procedural defaults, he has failed to carry his burden of proof. There can be no question that "Constitutionally ineffective assistance of counsel can constitute cause" under *Frady*. *Holladay v. Haley,* 209 F.3d 1243, 1254 (11th Cir.2000). "In order to [establish cause], however, the claim of ineffective assistance must have merit." *United States v. Nyhuis,* 211 F.3d at 1344.

Because Perez-Hernandez has failed to plead or demonstrate a meritorious claim of ineffective assistance of appellate counsel, see *supra*, he cannot overcome those procedural defaults previously identified.

Petitioner also claims that he is actually innocent.   Doc. 107 at 8 ("Perez (Petitioner) asserts that he is innocent of the charge's against him.  He did not possess, owned, or had shot anybody.") (Punctuation, emphasis and grammar unchanged.)  The undersigned finds this attempt to excuse his procedural defaults, if that is what was intended, is not credible.  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented [during his guilty plea and sentencing hearings]. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865, 130 L. Ed. 2d 808 (1995).  The evidence of record proves that Perez-Hernandez clearly possessed a firearm after conviction of a felony and used that firearm to inflict a gunshot wound to the abdomen of the victim.  Any post-guilty-plea claim that he acted in self-defense or a self-serving declaration that he did not shoot anyone does little to establish actual innocence.

C.     **Certificate of Appealability.**   In consideration of the foregoing, it is recommended that the Court deny Perez-Hernandez's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Here, Perez-Hernandez's § 2255 motion is being denied both on procedural grounds without reaching the merits of the constitutional claims, such that "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), and also on the merits, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.*; *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537

U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as petitioner has defaulted his purported guilty plea and sentencing hearing claims a reasonable jurist could not conclude either that this Court is in error in denying the instant petition or that Perez-Hernandez should be allowed to proceed further regarding these claims, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In addition, it is recommended that the Court find that reasonable jurists could not debate whether Perez-Hernandez's § 2255 habeas petition should be resolved in a different manner (with respect to his ineffective assistance of counsel claims) or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability with respect to any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and*

*recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## IV. **Conclusion**

In accordance with the foregoing analysis, it is **RECOMMENDED** that Perez-Hernandez's motion to amend (Doc. 135) be **GRANTED,** that his request for an evidentiary hearing be **DENIED,** and that Perez-Hernandez's § 2255 motion (Doc. 107), as amended, be **DENIED** and **DISMISSED with prejudice.** Should that recommendation be adopted, it is further **RECOMMENDED** that Perez-Hernandez be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## V. **Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection

must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 24th day of November, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**